# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| **KEVIN J. FEHELEY,** *as Administrator and Personal Representative of the Estate of Sheila Clay Joubran, deceased, and as Guardian and Conservator of Kevin J. Feheley, Jr., an incapacitated person*, | )<br>)<br>)<br>)<br>)<br>) |
| **Plaintiff,** | ) |
| v. | ) |
| **FOREST PHARMACEUTICALS, INC., FOREST LABORATORIES, INC., and MARY JOUBRAN,** *as Personal Representative of the Estate of Elias Joubran, deceased*, | )<br>)<br>)<br>)<br>) |
| **Defendants.** | ) |

Case No.: 1:17-CV-1404-VEH

## MEMORANDUM OPINION

This civil action was originally filed in the Circuit Court of Calhoun County, Alabama, by the Plaintiff, Kevin J. Feheley, in his capacity as both the administrator and personal representative of the Estate of Sheila Clay Joubran, who is deceased, and also as the guardian and conservator of Kevin J. Feheley, Jr., an incapacitated person. (Doc. 1-2 at 5). The suit names as defendants Forest Pharmaceuticals, Inc. ("Forest Pharm") and Forest Laboratories, Inc. ("Forest Labs") (hereinafter collectively referred to as "Forest"). It also names as a defendant Mary Joubran, the

personal representative of the Estate of Elias Joubran, who is deceased. On August 18, 2017, Forest Labs alone, removed this case to this district and division, alleging that jurisdiction is proper pursuant to 28 U.S.C. § 1332. (Doc. 1). The remaining Defendants' consent to removal was not obtained.[1]

Against Forest, the Complaint sets out the following claims: "Products Liability Under [the] AEMLD and Strict Liability Pursuant to §402A of the Restatement (Second) of Torts" (Count One); "Product Liability (Failure to Warn)" (Count Two); "Product Liability" (Count Three); "Negligence and Wantonness" (Count Four); "Breach of Express Warranty" (Count Five); "Breach of Implied Warranty" (Count Six); "Misrepresentation, Fraud, Suppression, and Deceit" (Count Seven); and "Civil Conspiracy" (Count Eight). Against all defendants the Plaintiff sets out a claim for "Wrongful Death" (Count Nine). All counts arise out of a tragic incident; on December 30, 2015, Elias Joubran shot Sheila Clay Joubran, his wife, and then shot and killed himself. As a result of her injuries, Sheila Joubran died shortly after Elias. At the time of those events, Elias Joubran had been prescribed, and was taking, a drug

---

[1] Only Forest Laboratories, Inc., and not Forest Pharmaceuticals, Inc., removed this action. Although consent of all defendants must be obtained for removal, according to the Notice of Removal, Forest Pharm has not been served. The consent to removal by non-served defendants is not required. *See* 28 U.S.C. 1446(b). Furthermore, "fraudulently joined" defendants need not consent to removal. *GMFS, L.L.C. v. Bounds,* 275 F. Supp.2d 1350, 1353 (S.D. Ala. 2003). The Notice of Removal claims that Mary Joubran, in her representative capacity, has been fraudulently joined. This opinion will address that issue.

2

called "Lexapro." Forest is the

> marketer, promoter, seller, manufacturer, distributor, and entity which did manufacture, create, design, test, label, package, distribute, market, sell, advertise, fail to warn, and otherwise handle and distribute in commerce, the products, Lexapro 10mg tablets.

(Doc. 1-2 at 7).

This case comes before the Court on the Motion To Remand for lack of jurisdiction filed by the Plaintiff (the "Motion"). (Doc. 11). Forest Labs requested oral argument on the motion. Accordingly, a hearing was held on October 13, 2017. For the reasons stated at the hearing, and in this memorandum opinion, the motion will be **GRANTED** and this case will be **REMANDED** to the Circuit Court of Calhoun County, Alabama.

## I.     ANALYSIS

### A.     General Principles

"It is by now axiomatic that the inferior courts are courts of limited jurisdiction. They are empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution, and which have been entrusted to them by a jurisdictional grant authorized by Congress." *Univ. of South Alabama v. The American Tobacco Co., et al.*, 168 F.3d 405, 409 (11th Cir. 1999) (internal citations omitted). "Accordingly, when a federal court acts outside its statutory

subject-matter jurisdiction, it violates the fundamental constitutional precept of limited federal power." *Id*. (internal citations omitted). "Simply put, once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." *Id.* at 410 (citing *Ex parte McCardle*, 74 U.S. (7 Wall.) 506 (1868)).

"A necessary corollary to the concept that a federal court is powerless to act without jurisdiction is the equally unremarkable principle that a court should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings." *Univ. of S. Ala.*, 168 F.3d at 410. "Indeed, it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Id.* (citing *Fitzgerald v. Seaboard Sys. R.R.*, 760 F.2d 1249, 1251 (11th Cir. 1985) (per curiam)).

Furthermore, "[t]he jurisdiction of a court over the subject matter of a claim involves the court's competency to consider a given type of case, and cannot be waived or otherwise conferred upon the court by the parties. Otherwise, a party could 'work a wrongful extension of federal jurisdiction and give district courts power the Congress denied them.'" *Jackson v. Seaboard Coast Line R.R.*, 678 F.2d 992, 1000-01 (11th Cir. 1982) (quoting *American Fire & Cas. Co. v. Finn*, 341 U.S. 6, 18 (1951)) (internal footnotes and citations omitted). Moreover, "[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to

construe removal statutes strictly." *Univ. of S. Ala.*, 168 F.3d at 411 (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941)).

Lastly, Congress has decreed, and the Supreme Court has confirmed, that - with the express exception of civil rights cases that have been removed - orders of remand by district courts based upon certain grounds, including in particular those premised upon lack of subject matter jurisdiction, are entirely insulated from review. More specifically, § 1447(d) provides:

> An order remanding a case to the State court from which it was removed <u>is not reviewable on appeal or otherwise</u>, except that an order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title shall be reviewable by appeal or otherwise.

28 U.S.C. § 1447(d) (emphasis added); *see also Kirchner v. Putnam Funds Trust*, 547 U.S. 633, 642 (2006) (recognizing that "'[w]here the [remand] order is based on one of the grounds enumerated in 28 U.S.C. § 1447(c), review is unavailable no matter how plain the legal error in ordering the remand'") (citing *Briscoe v. Bell*, 432 U.S. 404, 413 n.13 (1977)); Milton I. Shadur, *Traps for the Unwary in Removal and Remand*, 33 no. 3 Litigation 43 (2007); *Powerex Corp. v. Reliant Energy Servs., Inc.*, 127 S. Ct. 2411, 2418 (2007) (holding that when "the District Court relied upon a ground that is colorably characterized as subject-matter jurisdiction, appellate review is barred by § 1447(d)").

## B. Diversity Jurisdiction

Forest Labs premises its removal upon this court's diversity jurisdiction. "Diversity jurisdiction exists where the suit is between citizens of different states and the amount in controversy exceeds the statutorily prescribed amount, in this case $75,000." *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001) (citing 28 U.S.C. § 1332(a)). Therefore, removal jurisdiction based upon diversity requires: (1) complete diversity of citizenship between the plaintiff(s) and the defendant(s); and (2) satisfaction of the amount in controversy requirement. The only issue raised in the pending motion is whether there is "complete diversity."

### 1. *The Citizenship of the Personal Representatives Is Unclear*

Diversity jurisdiction "requires complete diversity—every plaintiff must be diverse from every defendant." *Palmer v. Hosp. Auth.*, 22 F.3d 1559, 1564 (11th Cir. 1994). "Citizenship, not residence, is the key fact that must be alleged in the complaint to establish diversity for a natural person." *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994).

The parties seem to agree[2] that the Plaintiff, and Mary Joubran, in her representative capacity, are both citizens of the state of Alabama–a circumstance

---

[2] The court uses the phrase "seem to agree" because even the briefs do not clearly allege citizenship.

which would destroy complete diversity. Accordingly, the dispute requires this Court to determine whether the Plaintiff "fraudulently joined" Mary Joubran. However, because the Complaint is not clear as to citizenship, a word or two on that issue is appropriate.

For purposes of determining diversity of citizenship, a decedent's personal representative is deemed a citizen of the same state as the decedent. 28 U.S.C. § 1332(c)(2). However, the Complaint fails to allege the <u>citizenship</u> of Mary Joubran. Instead, it states:

> Defendant Mary Joubran as Personal Representative of the Estate of Elias Joubran, deceased, resides in Tuscaloosa County in the State of Alabama, and her decedent, Elias Joubran, at the time of his death resided in Calhoun County, Alabama, where he shot Sheila Clay Joubran, and then shot himself. The estate administered by Defendant Mary Joubran as Personal Representative of the Estate of Elias Joubran, deceased, is in Calhoun County.

(Doc. 1-2 at 6, ¶2). Thus, the Complaint focuses on the "residence" of both Mary Joubran and Elias Joubran. However, as the Eleventh Circuit has noted: "Residence alone is not enough. Citizenship is equivalent to 'domicile' for purposes of diversity jurisdiction. And domicile requires both residence in a state and an intention to remain there indefinitely." *Travaglio v. Am. Exp. Co.*, 735 F.3d 1266, 1269 (11th Cir. 2013) (internal quotations and citations omitted). Furthermore, the Court sees no relevance, for jurisdictional purposes, as to the location where the estate is being

administered.

The Complaint <u>does</u> successfully allege the citizenship of the Plaintiff, Kevin J. Feheley, who, "is the father, guardian and conservator of the sole surviving heir of Shelia Clay Joubran, namely Kevin J. Feheley, Jr." (doc. 1-2 at 6, ¶1), whom he represents in this case. "[T]he legal representative of an infant or incompetent shall be deemed to be a citizen only of the same State as the infant or incompetent." 28 U.S.C.A. § 1332(c)(2). Recall that citizenship is synonymous with domicile. "Since most minors are legally incapable of forming the requisite intent to establish a domicile, their domicile is determined by that of their parents." *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48, 109 S. Ct. 1597, 1608, 104 L. Ed. 2d 29 (1989). The Complaint notes that the Plaintiff, Kevin J. Feheley, "is a resident <u>citizen</u> of the State of Alabama." (Doc. 1-2 at 6, ¶1). Because the Plaintiff is a citizen of Alabama, his <u>domicile</u> is the State of Alabama. His son's domicile would therefore also be Alabama, which means his son is a citizen of the State of Alabama. Pursuant to 28 U.S.C. §1332(c), the Plaintiff, as his son's representative, is deemed to be a citizen of the State of Alabama.

The Eleventh Circuit has clearly stated that "an unsworn statement in a brief, alone, can[not] demonstrate a party's citizenship for purposes of establishing diversity jurisdiction." *See, Travaglio v. Am. Exp. Co.*, 735 F.3d 1266, 1269 (11th Cir. 2013).

Of course, the parties "agreement" that the parties are non-diverse does not establish diversity, it destroys it. Furthermore, since "the party seeking to remove the case to federal court bears the burden of establishing federal jurisdiction" *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752 (11th Cir. 2010), and completely diversity has not been shown by the Defendant, the removing party, the Court will remand this case unless Mary Joubran, in her representative capacity, has been fraudulently joined.

### 2. *Fraudulent Joinder Principles*

"[W]hen there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant[,]" fraudulent joinder is established. *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). As noted above, if fraudulent joinder is established, then the resident defendant is subject to dismissal as a party and its citizenship is disregarded. *See id.*

The Eleventh Circuit extensively addressed the issue of removal based on diversity jurisdiction when it is alleged that a non-diverse defendant has been fraudulently joined in *Crowe v. Coleman*, 113 F.3d 1536 (11th Cir. 1997). There the court stated:

> In a removal case alleging fraudulent joinder, the removing party has the burden of proving that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court. *Cabalceta v. Standard Fruit Co.*, 883 F.2d

1553, 1561 (11th Cir. 1989). The burden of the removing party is a "heavy one." *B. Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. Unit A 1981).

*Crowe*, 113 F.3d at 1538.[3]

The standard is onerous because, absent fraudulent joinder, a plaintiff has the absolute right to choose his forum. That is, courts must keep in mind that the plaintiff is the master of his complaint and has the right to choose how and where he will fight his battle. As *Crowe* further recognized:

> This consequence makes sense given the law that "absent fraudulent joinder, plaintiff has the right to select the forum, to elect whether to sue joint tortfeasors and to prosecute his own suit in his own way to a final determination." *Parks v. The New York Times Co.*, 308 F.2d 474, 478 (5th Cir. 1962). The strict construction of removal statutes also prevents "exposing the plaintiff to the possibility that he will win a final judgment in federal court, only to have it determined that the court lacked jurisdiction on removal," *see Cowart Iron Works, Inc. v. Phillips Constr. Co., Inc.*, 507 F. Supp. 740, 744 (S.D. Ga. 1981) (quoting 14A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedures § 3721), a result that is costly not only for the plaintiff, but for all the parties and for society when the case must be re-litigated.

*Crowe*, 113 F.3d at 1538.

<u>Clear and convincing evidence</u> and <u>particularity in pleading</u> is required to establish fraudulent joinder of a resident defendant. *Parks*, 308 F.2d at 478. Although

---

[3] Under the second prong of the fraudulent joinder test, a court must determine whether the plaintiff has fraudulently pled facts relating to a party's citizenship in an effort to avoid diversity jurisdiction. No issue related to the second prong has been presented. Accordingly, the Court limits its analysis to the first prong.

10

affidavits and depositions may be considered, the court must not undertake to decide the merits of the claim but must look to whether there is a <u>possibility</u> that a claim exists. More particularly, the *Crowe* Court explained the framework for analyzing fraudulent joinder as:

> While "the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b)," [*B. Inc., v. Miller Brewing Co.*, 663 F.2d 545, 549, n.9 (5th Cir., Unit A 1981)], the jurisdictional inquiry "must not subsume substantive determination." *Id.* at 550. Over and over again, we stress that "the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits." *Id.* at 548-49. When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law. *See id.* "<u>If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court</u>." *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440-41 (11th Cir. 1983), *superseded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533 (11th Cir. 1993).

*Crowe*, 113 F.3d at 1538 (emphasis added).

In a later fraudulent joinder decision, the Eleventh Circuit elaborated:

> The fact that the plaintiffs may not ultimately prevail against the individual defendants because of an insufficient causal link between the defendants' actions and the plaintiffs' injuries does not mean that the plaintiffs have not stated a cause of action for purposes of the fraudulent joinder analysis. In a fraudulent joinder inquiry, "federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." *Crowe*, 113 F.3d at 1538.

*Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1380-81 (11th Cir. 1998); *see also Tillman v. R.J. Reynolds Tobacco*, 340 F.3d 1277, 1279 (11th Cir. 2003) ("[I]f there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to state court.").

### 3. *Application of the Fraudulent Joinder Standard*

Against the foregoing backdrop, the Court now turns to the application of the fraudulent joinder standard to this case. As noted by the Plaintiff, a clear, arguable, and even plausible wrongful death claim has been alleged against Mary Joubran as administrator of Elias Joubran's estate. *See*, doc. 1-2 at 6 (generally); at 6 ¶2; at 22, ¶¶35-36; at 24, ¶41; at 39-40, ¶¶94-95).

#### a. **The Plaintiff May Maintain a Claim Against the Estate Even if the Majority of the Facts Are Pled Against Other Defendants**

The Defendant argues that, when read as a whole, "it is clear that the Plaintiff intends only to pursue claims against Forest [], not the Estate of Elias Johnson." (Doc. 14 at 2). It makes this argument based on the fact that other than "a few select paragraphs," virtually the entire Complaint is directed at Forest (doc. 14 at 3), and eight of the nine Counts in the Complaint are directed at Forest (doc. 14 at 4-5). The Defendant cites no authority that merely because the "majority" of the allegations and

12

Counts in the Complaint are directed towards it, there is no possibility that a state court would find that the Complaint states a cause of action against it and the Estate of Elias Joubran,

### b. The Plaintiff May Plead in the Alternative

The Defendant also argues that "the Estate of Elias Joubran would not be liable to [P]laintiff if Lexapro cause[d] Mr. Joubran to shoot his wife." (Doc. 14 at 3). Whether or not that is true, the Plaintiff is entitled to plead alternative, hypothetical, and even inconsistent theories of liability. FED. R. CIV. P. 8(d); ALA. R. CIV. P. 8(e). Accordingly, this argument also fails to establish that a state court would find that the Complaint fails to state a cause of action against the Estate of Elias Joubran.

### c. The Complaint States a Valid Claim for Relief

The Defendant further argues that

> the Complaint contains no allegations that Elias Joubran would have shot his wife even if he had not taken Lexapro, or that he is liable if Lexapro did not cause his actions. Forest submits [P]laintiff did not provide fair notice of any claim against the Estate in his Complaint.

(Doc. 14 at 4-5). "To determine whether it is possible that a state court would find that the complaint states a cause of action, we must necessarily look to the pleading standards applicable in state court, not the plausibility pleading standards prevailing in federal court." *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1334 (11th Cir. 2011).

In this case, the Court applies Alabama's traditional notice pleading standards. *See Crum v. Johns Manville, Inc.*, 19 So. 3d 208, 212, n. 2 (Ala. Civ. App. 2009).

The Complaint alleges that Mary Joubran's decedent, Elias Joubran "shot Sheila Clay Joubran, and then shot himself." (Doc. 1-2 at 6, ¶2). The Complaint also alleges:

> 35. On or about December 30, 2015, Defendant Mary Joubran's decedent, Elias Joubran, entered the Wildwood Lane home belonging to him and his wife, Plaintiff's decedent Sheila Clay Joubran, and shot her with a handgun and then turned the gun on himself and committed suicide. The coroner reports that Elias Joubran died instantly and that Sheila Clay Joubran died shortly thereafter.

(Doc. 1-2 at 22, ¶35). In addition, the Complaint states that "all Defendants" engaged in acts which "combined and concurred and proximately caused the . . . death of Sheila Clay Joubran." (Doc. 1-2 at 40). The Court holds that these factual allegations pass muster under both the notice pleading and plausibility standards.

### d. The Plaintiff's "Intention" To Pursue a Judgment Against the Estate

The Defendant next argues that the Plaintiff has no "real" intention to pursue a judgment against the Estate of Elias Joubran. It argues:

> The [E]state of Elias Joubran was opened on January 22, 2016. On December 19, 2016, the Estate of Sheila Clay Joubran filed a claim against the Estate of Elias Joubran. On December 20, 2016, Calhoun County Probate Court Judge Alice Martin held a status conference to, at least in part, address that claim.

> Plaintiff's counsel George Robinson was present, as was Wesley Frye, the guardian ad litem for plaintiff Kevin Feheley, Jr. On December 29, 2016, Judge Martin issued an order requiring the Estate of Elias Joubran to:
>
> • **Submit to the Court a verified statement of the Inventory of the assets of the decedent, Elias F. Joubran, and a formal Accounting of what has been received by the Personal Representative and what has been expended in this matter;**
>
> • **FILE WITH THE COURT, WITHIN 30 DAYS FROM THE DATE OF THIS ORDER, a detailed list of all financial accounts, both joint and separate, which were in the name of Elias F. Joubran at the time of his death.**
>
> No inventory was filed. Yet there has been no follow up from the Estate of Sheila Joubran. No one on behalf of the Estate of Sheila Joubran has communicated with counsel for the Estate of Elias Joubran since the status conference.

(Doc. 14 at 5-6) (citations omitted) (emphasis in original). The Defendant argues that the "[P]laintiff's failure to follow up in any manner for nearly eight months with respect to the claim it presented in the Probate Court . . . demonstrates that [the] [P]laintiff has not [sic] real, good faith intentional [sic] to pursue a claim to judgment against the Estate." (Doc. 14 at 8). The Defendant also argues that it is undisputed that the Plaintiff is entitled to whatever the Estate of Elias Joubran has (doc. 14 at 6), which is less than $50,000 (doc. 14 at 8), so it "does not make any practical sense for

[the] [P]laintiff to pursue a claim against the Estate [in this case]" (doc. 14 at 8).

In support of this argument, the Defendant quotes this Court's opinion in *Collins v. Marten Transp., Ltd.*, No. 4:14-CV-0257-VEH, 2014 WL 972245, at *6 (N.D. Ala. Mar. 12, 2014) (Hopkins, J.): "'On the question of removal we have not to consider more than *whether there was a real intention to get a joint judgment and whether there was a colorable ground for it* shown as the record stood when the removal was denied.'" (emphasis in original) (*quoting Chicago, Rock Island & Pacific Ry. Co. v. Schwyhart*, 1913, 227 U.S. 184, 33 S.Ct. 250, 57 L.Ed. 473 (1913)). In *Collins*, The language cited by this Court in *Collins* was part of this Court's effort to demonstrate that "fraudulent joinder is not appropriate where the jurisdictional underpinnings relied upon by the removing party involve questions of credibility and/or the relative weight of evidence." *Collins*, 2014 WL 972245 at *6. The removing Defendant had asked the Court to consider a then-pending Motion for Summary Judgment, which had been filed pre–removal by a resident co-defendant, and the evidence associated therewith. This Court's opinion had nothing to do with whether the plaintiff had a "real" intention to pursue a claim against the resident defendant. Noting that the plaintiff's claim against the defendant was not "overtly frivolous or fraudulent," this Court held that the defendant was not fraudulently joined.

The Defendant also cites to several cases which address the issue of "abandonment" and "good faith intention to pursue" a claim against a defendant. For example, it quotes the following language from *Davis v. Am. Med. Sec., Inc.*, 334 F. Supp. 2d 1292, 1293 (N.D. Ala. 2004) (Acker, J.):

> There is a countervailing principle that arguably prevents a plaintiff from avoiding a diversity removal if his failure to pursue a non-diverse defendant is deliberate and calculated. Such a course of non-action might be described as a subterfuge or the belated equivalent of a fraudulent joinder.

*Davis*, 334 F. Supp. 2d at 1293. In *Davis,* the diverse defendants removed the action, based on diversity, shortly before the one year limitation for doing so expired. They argued fraudulent joinder based on the fact that, despite having "ample time" to locate and serve the resident defendant, the plaintiff had failed to do so, "arguably abandoning [the] action against [that defendant]." *Id.* at 1292-1293. After the plaintiff filed an alias summons in federal court, Judge Acker determined that the plaintiff intended to proceed against the resident defendant, "and has always been serious, just slow." *Id.* at 1293. Unlike in *Davis*, there is no allegation that the instant Plaintiff has been anything less than diligent in pursuing his claims against the resident Defendant in <u>this</u> Court.

Similarly, the Defendant cites *Faulk v. Husqvarna Consumer Outdoor Prod. N.A., Inc.*, 849 F. Supp. 2d 1327, 1330–31 (M.D. Ala. 2012) (Fuller, J.), where that

17

Court wrote:

> Plaintiff's course of conduct unequivocally has demonstrated voluntary abandonment of his claims against Bobby Daffin. As of the date of the pretrial conference, less than a month before trial in state court, Plaintiff had not served Bobby Daffin. Plaintiff had not even attempted to serve Bobby Daffin since early May of 2011. This is despite an impending trial date and clear opportunities to effect service, such as Bobby Daffin's deposition in late November of 2011, which took place at Plaintiff's counsel's law office. The omission of service on that date is a clear expression of intent to abandon pursuit of claims against Bobby Daffin. Furthermore, Plaintiff's pretrial contentions, which were prepared for the pretrial order (reproduced in the notice of removal), assert no claims against [Daffin]. This is another expression of intent to discontinue the case against Daffin. Finally, as if Plaintiff's actions pre-removal were not enough, Plaintiff essentially argues in support of remand that Husqvarna should have realized that Bobby Daffin was fraudulently joined earlier in the case. (Mot. to Remand 2–3 ("Husqvarna has known since the filing of this case that the Plaintiff's claims against Defendant Daffin were defective.... The removing Defendant knew at the time the lawsuit was filed that the accident was not caused by the actions of the non-diverse Defendant.").)
>
> In addition to constituting clear acts of voluntary abandonment, the Court also finds that remand is unwarranted because Plaintiff lacks a good faith intention to pursue his claims against Daffin. . . . Where the plaintiff's collective litigation actions, viewed objectively, clearly demonstrate a lack of good faith intention to pursue a claim to judgment against a non-diverse defendant, the court should dismiss the non-diverse defendant and retain jurisdiction over the case. As the preceding paragraph makes clear, the non-service—indeed, the non-attempt of service since practically the inception of the case—was intentional. Service on Bobby Daffin could have been achieved at his deposition at Plaintiff's counsel's law office with a minimum of effort. The failure to attempt to serve Bobby Daffin is compounded by Plaintiff's pretrial submissions and correspondence, which also indicate that Plaintiff does not intend to pursue claims against Bobby Daffin at

18

> trial. In addition, Plaintiff's argument in support of remand (conceding that no viable cause of action exists) indicates that Plaintiff will not pursue claims against Bobby Daffin in state court in the event of remand.

*Faulk*, 849 F. Supp. 2d at 1330–31 (citations omitted). Again, nothing has occurred in <u>this</u> case which suggested either an abandonment or a lack of a good faith intent to pursue claims against the Estate of Elias Joubran <u>here</u>. *See also, Gabriel v. Life Options Int'l, Inc.*, No. CIV.A. 14-358-CG-B, 2015 WL 1967498, at *4 (S.D. Ala. Apr. 30, 2015) (Granade, J.) ("At first glance, there is not diversity of the parties. However, when Chartis Specialty removed this litigation to federal court, the Plaintiffs were no longer pursuing the claims against the Howard Defendants due to their settlement agreement.").

The Defendant argues that joining Mary Joubran, in her representative capacity, was done in order to destroy diversity. However, "Supreme Court precedent is clear that a plaintiff's motivation for joining a defendant is not important as long as the plaintiff has the intent to pursue a judgment against the defendant." *Triggs,* 154 F.3d at 1291 (citing *Schwyhart*, 227 U.S. 184 (1913)). In this case, as noted above, there has been no indication that the Plaintiff does not intend to pursue the wrongful death claim against Mary Joubran in her representative capacity.

## II. CONCLUSION

Based on the foregoing, the Court concludes that there is at least a possibility that a state court would find that the Complaint states a cause of action for wrongful death against Mary Joubran, as the personal representative of the Estate of Elias Joubran. That estate therefore is not fraudulently joined. Since the Defendant, as the removing party, has failed to show that there is completely diversity between Defendant Mary Joubran, in her representative capacity, and the Plaintiff, in his representative capacity, this case must be **REMANDED**. A separate Order of Remand will be entered.

**DONE** and **ORDERED** this 20th day of October, 2017.

**VIRGINIA EMERSON HOPKINS**
United States District Judge